# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| LARRY REINLASODER,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF COLSTRIP, and MAYOR ROSE HANSER, in her Individual and Official Capacity,<br><br>Defendants. | CV-12-107-BLG-SEH-CSO<br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON MOTION FOR SUMMARY JUDGMENT** |

The Court addresses herein a motion for partial summary judgment filed by Defendants City of Colstrip ("Colstrip") and Mayor Rose Hanser ("Hanser").  *ECF 21.*[1]  The motion seeks summary judgment on Plaintiff Larry Reinlasoder's ("Reinlasoder") third cause of action, which asserts claims under 42 U.S.C. § 1983.  The remaining claims in Reinlasoder's Amended Complaint are wrongful termination, defamation, state due process violations, malice, negligence, and abuse of process.  *ECF 18.*

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

## I.   BACKGROUND

Colstrip is a Montana municipality utilizing a mayor/council form of government.  *Aff. Richards (ECF 27) at ¶ 3.*  John Williams ("Williams") served as Colstrip's first mayor from 1999 through 2011. Colstrip created its police department in 2004, and Reinlasoder was hired as Colstrip's first Chief of Police in May 2004.  *Aff. Williams (ECF 24) at ¶ 3.*  Colstrip also formed its Police Commission ("Commission") during this time.  *Id. at ¶¶ 4-5.*

On September 25, 2009, Williams issued to Reinlasoder a letter of reprimand for forwarding "inappropriate material to subordinate officers...utilizing the City's owned computer system."  *ECF 24-3.* Williams states in his affidavit that the email contained pornographic material.  *ECF 24 at ¶¶ 9-10.*  Reinlasoder disputes this, stating that Williams "never classified the email as pornographic," and Reinlasoder instead contends it was "a cartoon type email...that was a play on words."  *Aff. Reinlasoder (ECF 34) at ¶¶ 11, 15.*  The reprimand letter placed Reinlasoder on probation for two years, providing that the letter would be removed from his file upon successful completion of the probation period.  *ECF 24-3.*  Reinlasoder did not appeal this

reprimand letter to the Commission.

Reinlasoder also received reprimand letters in 2010 and 2011. The 2010 letter questioned Reinlasoder's reported work times and also alleged that he had improperly taken city-owned dog food for personal use. *See ECF 24-4.* Reinlasoder successfully appealed this reprimand letter, and the Commission ordered it removed from his file. *ECF 27-9 at 3.* The 2011 reprimand letter alleged that Reinlasoder had violated the City's policy regarding purchasing authority and limits. *See ECF 24-7.* Reinlasoder also appealed this letter to the Commission. The Commission affirmed the reprimand, but shortened the time in which the reprimand letter would remain in Reinlasoder's file by six months, until March 29, 2012. *ECF 27-11.*

Hanser was elected mayor of Colstrip in 2011 and took office in January 2012. *Aff. Hanser (ECF 28) at ¶ 2.* She states in her affidavit that Mayor Williams advised her of "all pending matters when [she] took office, including the possible adoption of rules and procedures for the Colstrip Police Commission." *ECF 28 at 2, ¶ 3.* In early January, Hanser discussed with Colstrip City attorney Gary Ryder ("Ryder") the need to reorganize Colstrip's Commission, and Ryder began work on an

ordinance to that effect.  *Aff. Ryder (ECF 26) at ¶¶ 3, 5.*  The City
Council passed the ordinance reconstituting the Commission
(Ordinance 2012-01) on second reading on March 27, 2012, and it
became effective April 27, 2012.  *ECF 27 at 2, ¶ 7.*

Hanser recommended three persons for appointment as Police
Commissioners.  On May 8, 2012, the City Council approved these
recommendations and made the following appointments: Janetta
Dudley for a one-year term, Roy Dolbear for a two-year term, and Rod
Benner for a three-year term.  *ECF 27-7 at 2.*  Rod Benner is the pastor
of Hanser's church.  *Depo. Hanser (ECF 33-11) at 11.*  Janetta Dudley
and Hanser have attended ladies prayer meetings together for
approximately five years, often at Dudley's home.  *Id.*

In March 2012, three additional complaints were made against
Reinlasoder.  On March 15, 2012, Officer Kris Egan claimed that
Reinlasoder had left work early the previous day, and submitted a note
to Hanser stating that she claimed an extra hour of "call out pay"
"because Chief Reinlasoder left at 7:00 which leaves the time from 7:00
to 7:30 uncovered for back up."  *ECF 25-1 at 18.*  Hanser then sent an
email to Reinlasoder stating that, because of the incident, Reinlasoder

"failed to perform duties in a satisfactory manner" in violation of Colstrip's Policy and Procedures Manual.  *ECF 25-1 at 19*.[2]  This March 15, 2012 email also stated that "before any formal disciplinary action is taken, you may personally present your side of the story and evidence orally or in writing to my office."  *Id*.  Reinlasoder responded by email the same day, stating that he "was on overtime and at home for dinner," and had come to work early and did not authorize anyone to claim on-call pay.  *ECF 25-1 at 20*.

Two days later, on March 17, 2012, Hanser received an email complaint from dispatcher Lisa Demaniow stating that she felt that Reinlasoder had verbally and physically intimidated her.  *See Email dated March 17, 2012 (ECF 28-7)*.  Demaniow stated that a dispute on March 12, 2012, escalated into a loud verbal argument.  She stated that she "no longer felt comfortable in dispatch with [Reinlasoder] there without someone else being present."  *Id*.  She submitted her email "to begin the grievance process."  *Id*.  Hanser's deposition testimony indicates that she had discussed Demaniow's concerns with Demaniow

---

[2]On March 1, 2012, Hanser had sent a letter to Reinlasoder stating that she was requiring supervisory coverage of police officer day shift hours from 15 minutes before the day shift began until 15 minutes after it ended, effective March 12, 2012.  *See ECF 28-4*.

in Hanser's office on March 15, 2012.  *ECF 33-11 at 19*.

In response to the complaints, on March 19, 2012, Hanser wrote a letter to Reinlasoder placing him on administrative leave on March 20, 21, 22, 29, and April 4-6, 2012.  *ECF 28-8*.  Hanser indicated that the administrative leave was "necessary to investigate a complaint made to my office" and that Reinlasoder would "be apprised of the matter as to whether or not the complaint is substantiated."  *Id*.  The letter did not disclose the nature of the complaint.

On March 21, 2012, Hanser received a "written complaint for sexual harassment" submitted by dispatcher Mercedes Kroll.  *ECF 28-9*.  Kroll alleged that on March 6, 2012, Reinlasoder approached her in her dispatch area and asked whether Kroll would like to "come see my porn in my office."  *ECF 28-9*.  Kroll alleged that Reinlasoder stated "you look like a freaky kind a girl that would like porn."  *Id*.  Kroll also alleged that on March 13, 2012, Reinlasoder approached her, looked at her "chest/cross necklace" and stated "I see you have a cross on, does that make you better then (sic) us?  So I guess that means now you will go down to the Mayor's office and become friends."  *Id*.  Kroll's complaint states that Sergeant Cory Hert and Officer Hayes were

present, and Hert generally corroborated these events in a to-whom-it-may-concern letter dated March 21, 2012.  *ECF 28-10.*

Later that day, Hanser sent Reinlasoder a letter placing him on administrative leave "until further notice."  *ECF 28-11.*  This March 21, 2012 letter stated that the "reason for the administrative leave is that it is necessary to investigate the complaints made to my office[,]" but did not further disclose the nature of the complaints.  *Id.*

Colstrip engaged Billings attorney Heather Sather ("Sather") to investigate the complaints against Reinlasoder.  *ECF 28 at ¶ 11.*  On March 28, 2012, Sather interviewed the complaining parties and other witnesses.  *Aff. Sather (ECF 25) at ¶ 4.*  After meeting with Sather, Ryder sent a letter dated April 5, 2012, to William D'Alton ("D'Alton"), Reinlasoder's attorney, summarizing the complaints made by Demaniow, Kroll, and Egan.  *See ECF 26-1.*

Sather interviewed Reinlasoder, with D'Alton present, on April 10, 2012.  *ECF 25 at ¶ 4.*  Sather thereafter prepared a report detailing her investigation and her conclusions, and sent it to Hanser via email and hard copy on April 30, 2012.  *See ECF 25-1.*  Although Sather's affidavit states that a copy was provided to Reinlasoder's counsel (*ECF*

*25 at 2, ¶ 5),* the report does not so indicate.  *See ECF 25-1 at 1, 13.*[3]

In a letter dated May 14, 2012, Hanser sent Reinlasoder a four-page letter to notify him of her intent to terminate his employment. *See ECF 28-12.*  The letter referenced Sather's report and noted that Sather "gave [him] an opportunity to give [his] side of the story at the office and in the presence of [his] attorney." *Id. at 1.*  The letter indicated that she had reviewed Sather's report, his personnel record, the transcript of a 2010 Police Commission Hearing, documents concerning his prior employment with the Billings Police Department, and "related issues." *Id.*  It summarized her findings with respect to the complaints made by Demaniow, Kroll, and Egan.  It also cited Reinlasoder's September 29, 2011 purchase order reprimand.  *Id. at 3.*  The letter concluded:

> Before I make the final decision, I am setting up a meeting with you at my office on May 21st, 2012 at 2:00 p.m. o'clock.  You will be afforded an opportunity to discuss this letter and the investigative report.  You may also have the meeting recorded. You may have your attorney present if you wish, however his participation will be limited to that as an observer.  You may also waive this meeting.

---

[3]Hanser's termination letter to Reinlasoder (ECF 28-14) indicates that he was provided a complete copy of Sather's report on May 15, 2012, along with her letter of intent to terminate his employment.

D'Alton notified Hanser by letter dated May 17, 2012, that Reinlasoder was not available on May 21 because he would be in South Dakota for an "event that was scheduled months ago." *ECF 28-13*. The letter did not ask Hanser to reschedule the meeting, but requested a hearing before the Commission pursuant to MCA § 7-32-4155. Reinlasoder did not attend the meeting with Hanser on May 21.

In her affidavit, Hanser states that she later learned that the "event" that created the conflict was Reinlasoder's plans to speak at a conference in South Dakota as Chief of Police for the City of Colstrip, and further states that she had not authorized that engagement. *ECF 28 at ¶ 15*. Hanser also states that Reinlasoder was on paid administrative leave, but had not sought permission to be unavailable during his regular hours of employment while on leave, nor did he have permission to travel on "City time" to South Dakota on May 21, 2012. *Id. at ¶¶ 14, 16*.

Reinlasoder's affidavit counters that "[m]onths prior to [his] administrative leave" he "made arrangements" to give a training presentation in South Dakota. *ECF 34 at 25, ¶ 94*. He does not state what arrangements were made, with whom he made these

arrangements, or when these arrangements were made.  Reinlasoder
also states in his affidavit that Hanser refused to change the May 21
meeting date, but again he provides no further details.  *Id. at ¶ 93*.

On May 22, 2013, Hanser sent Reinlasoder a letter of termination
of employment, effective May 24, 2012.  *ECF 28-14*.  The termination
letter referenced Sather's report, the prior 2009 reprimand, and the
Kroll, Demaniow, and Egan complaints.  The letter advised Reinlasoder
that he had the right, under MCA § 7-32-4155, to have the termination
reviewed by the Police Commission, and noted that the appeal
procedure is set forth in Ordinance 2012-03, effective May 10, 2013
(*ECF 27-8*).

On June 6, 2012, D'Alton wrote to Hanser requesting a hearing
before the Commission.  *ECF 27-13*.  Hanser responded that D'Alton's
notice of appeal did not comply with City Ordinance 2012-03, and her
letter to him included a copy of said ordinance.  She also stated: "Due to
the procedural change the City will allow an additional thirty (30) days
from the date of your request, June 6, 2012, to file the required written
appeal...."  *ECF 33-5*.  D'Alton timely complied on June 28, 2012, filing
a more detailed request for a Police Commission hearing.  *ECF 27-14*.

On July 17, 2012, Hanser sent to the Police Commissioners
Colstrip's response to Reinlasoder's appeal.  She requested the
Commission to proceed to review Reinlasoder's written appeal and
response of the City.  *ECF 26-2*.  On July 25, 2012, Ryder sent a letter
to the Commission (with copies to Hanser and D'Alton) stating that,
because termination of employment was at issue, the City believed that
a hearing should be held.  *ECF 26-4*.  The letter also stated:

> D'Alton indicated they may not pursue the Police Commission
> Hearing.  Until such time, however, that there is a formal notice
> withdrawing their previous request, the City submits that the
> Police Commission should go forward and set the time and place
> for the hearing.

*Id.*

The Police Commission Chairperson set a hearing for September
4, 2012.  *ECF 27-15*.

On August 27, 2012, D'Alton sent a letter to the Commission
Chairman, with a copy to Ryder, stating that Reinlasoder had filed a
complaint in federal court and would "not be present for the hearing
requested by the City of Colstrip."  *ECF 27-16*.  D'Alton's letter did not
expressly withdraw Reinlasoder's appeal and the Commission
conducted the hearing on the scheduled date, taking sworn testimony

from Hert, Kroll, Egan, Hanser, Demaniow, Officer Michael Hayes, Officer Andrea Demas, and City Clerk Michelle Richards. *ECF 27 at ¶ 20.* Neither Reinlasoder nor D'Alton attended the hearing.

The Commission determined that there was just cause for the termination and denied Reinlasoder's appeal. The written judgment notified Reinlasoder of his right to appeal to district court pursuant to MCA § 7-32-4164. *ECF 27-17.* Reinlasoder elected not to appeal to state district court, but rather chose to pursue this federal action.

## II.   PARTIES' POSITIONS

### A.   Defendants' Position

Defendants argue that their actions did not deprive Reinlasoder of his Fourth or Fourteenth Amendment rights. As to Reinlasoder's claim under the Fourth Amendment, Defendants argue that Reinlasoder was at no time unlawfully seized during the investigation process, because he voluntarily attended meetings and interviews and was never held against his will. *Defts' Br. in Support of Mot. for Partial Summary Judgment (ECF 22) at 15-17.* Defendants also argue that Reinlasoder has failed to demonstrate any evidence suggesting that he was unlawfully searched or his property unlawfully seized. *Id. at 15.*

As to Reinlasoder's claim under the Fourteenth Amendment, Defendants argue that Reinlasoder's investigation and ultimate termination did not offend substantive or procedural due process. Respecting substantive due process, Defendants argue that although Reinlasoder has a protected property interest in public employment, Reinlasoder's termination was supported by the written complaints submitted by Demaniow and Kroll, and therefore was not arbitrary or unreasonable. *Id. at 19-21*. Defendants also argue that Reinlasoder does not have a protected property interest in being free from investigation, therefore the conduct of the investigation cannot infringe a constitutionally protected property right. *Id. at 21-22*.

Respecting procedural due process, Defendants argue that Reinlasoder received all pre-termination and post-termination process that was legally due. *Id. at 23*. As to pre-termination process, Defendants argue that Reinlasoder received notice of the charges against him and of Hanser's intent to terminate him, and had an adequate opportunity to respond during Sather's interview of him. *Id. at 24-25*. Defendants also argue that Reinlasoder would have had the opportunity to further respond at the May 21, 2012 meeting with

-13-

Hanser, but elected not to attend. *Id. at 26*.

As to post-termination process, Defendants argue that Reinlasoder received the termination letter detailing the reasons for his termination, and that Reinlasoder failed to attend the hearing for his appeal of the termination. *Id. at 26*. Defendants also argue that Reinlasoder failed to appeal the Commission's findings to the district court. *Id. at 27*.

Finally, Defendants argue that Reinlasoder's § 1983 claim is barred by the doctrine of collateral estoppel. *Id. at 32*. Defendants argue that collateral estoppel applies because: (1) the Montana Supreme Court gives preclusive effect to police commission decisions; and (2) the Commission's decisions here satisfy the United States Supreme Court's standard of fairness. *Id. at 33-35*. Defendants assert that this Court is barred from considering any of the issues raised in Reinlasoder's appeals to the Commission with respect to his reprimand letters and ultimate termination. *Id. at 36*.

### B.   Reinlasoder's Position

In response, Reinlasoder first argues that Defendants' "brief and Statement of Undisputed Facts with the affidavits in support are based

on hearsay, conjecture and speculation." *Pltf's Br. in Opposition to Defts' Mot. for Summary Judgment (ECF 32) at 6.*  Reinlasoder objects to, and asks the Court to disregard, all inadmissible material contained in Defendants' motion documents.  *Id. at 7.*

Second, Reinlasoder argues that Defendants violated his Fourteenth Amendment rights by terminating his employment without due process.  Reinlasoder argues that: (1) Hanser made the decision to terminate Reinlasoder by March 26, 2012, prior to any investigation and without a hearing, *id. at 19*; (2) the investigation that did take place was inadequate and violated due process because Sather was inexperienced and unqualified, and performed an inadequate investigation into the relevant facts and law, *id. at 16-17*; (3) the investigation was pretextual because Hanser required the investigator be female and the investigation was inappropriately delayed while Hanser instituted a new Commission, *id. at 17-18*; and (4) Reinlasoder was not afforded an impartial post-termination hearing because two of the three-member Commission had personal relationships with Hanser, *id. at 20.*

Third, Reinlasoder argues that Defendants "broadcast[ed],

without any support, to the press that Reinlasoder was transmitting pornography" and that these "defamatory statements have made it impossible for Reinlasoder to gain future employment." *Id. at 23.* Reinlasoder asserts that the 2009 reprimand letter does not mention the word "pornography" and Hanser has not seen any evidence to support the allegation. Reinlasoder argues that this evidence constitutes a fact issue on whether the City damaged his reputation without due process. *Id.*

Responding to Defendants' collateral estoppel argument, Reinlasoder argues: (1) under Montana Supreme Court authority, an appeal to the Commission is not Reinlasoder's sole remedy; (2) issue preclusion does not apply because the Commission did not have jurisdiction to hear the civil rights claim that Reinlasoder brings before this Court; and (3) issue preclusion does not apply because Reinlasoder was not afforded a "full and fair opportunity" to litigate the issues before the Commission. *Id. at 25-28.*

## III.  <u>SUMMARY JUDGMENT STANDARD</u>

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The purpose of summary judgment is to pierce the pleadings and

to assess the proof in order to see whether there is a genuine need for trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.   DISCUSSION

### A.   Hearsay Objection

Reinlasoder "objects to all inadmissible materials contained in the City's brief, its SUF, and affidavits." *ECF 32 at 7.* He lists only one example – a statement in Williams' affidavit that Reinlasoder contends is hearsay.

Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Such objections, however, must be stated with enough particularity to permit the Court to rule. In a similar situation, one court explained: "The court will not engage in an exercise of postulating how each [exhibit] is objectionable." *Haack v. City of Carson City*, 2012 WL 3638767 at * 6 (D.Nev. Aug. 22, 2012); *see*

*also Halebian v. Berv,* 869 F.Supp.2d 420, 443 n. 24 (S.D.N.Y.2012) ("unsupported objection in entirely conclusory fashion to the entire record is insufficient and thus denied").  Thus, to the extent Reinlasoder objects to "all inadmissible materials" contained in Defendants' motion documents, the Court overrules the objection because it is not stated with particularity.

To the extent that Reinlasoder objects to hearsay in Williams' affidavit, the Court has not relied on any evidence concerning whether Colstrip had good cause to terminate Reinlasoder.  The issue presented by the present motion is narrow and primarily procedural.  Thus, in ruling on the present motion, the Court has relied only on facts that are undisputed.

### B.   <u>Section 1983</u>

Section 1983 provides:

> Every person who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) (internal quotation omitted)).  The statute's purpose "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id.* (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).

Reinlasoder titles his third cause of action: "42 U.S.C. 1983 – Due Process and Fourth Amendment." *ECF 18 at 7.*  It alleges that Defendants deprived Reinlasoder of his federally protected rights as follows:

> The Defendants violated Mr. Reinlasoder's rights under Fourth and Fourteenth Amendments of the United States Constitution by conducting a wrongful investigation of Mr. Reinlasoder and by wrongfully terminating his employment.

*Id. at 8, ¶ 52.*  Thus, the § 1983 claims pled by Reinlasoder relate to wrongful investigation and wrongful termination.

Defendants concede that Reinlasoder may maintain an action

under § 1983 against Colstrip and Hanser, but argue that Reinlasoder

cannot prove a constitutional deprivation.  *ECF 22 at 14.*  The Court

addresses Reinlasoder's specific constitutional claims in turn.

### 1.   Liberty Interest Deprivation

In his brief, Reinlasoder alleges that Defendants made "false

comments to the press and public that Reinlasoder was viewing and

transmitting pornography" and such comments "have damaged

Reinlasoder's liberty interest to gain employment."  *ECF 32 at 20-21.*

Reinlasoder argues that Hanser's use of the 2009 reprimand letter as a

basis for termination constitutes a separate due process violation.

But Reinlasoder did not plead this liberty interest deprivation in his

Amended Complaint, nor does the fact section of the Amended

Complaint allege facts to support such a legal theory.  *ECF 18 at 2-6.*

Rule 8(a)(2) requires a "short and plain statement of the claim

showing that the pleader is entitled to relief...."  In *Dura*

*Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 346-47 (2005), the

Supreme Court found a complaint insufficient, explaining:  "We concede

that ordinary pleading rules are not meant to impose a great burden

upon a plaintiff" but the allegations "must provide the defendant with

'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id. (quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

There being no factual basis alleged in the Amended Complaint to support this legal theory that was not affirmatively pled, the Court declines to address it. *See Nat'l Union of Healthcare Workers v. Kaiser Found. Health Plan, Inc.* 2013 WL 1616103, * 5 (N.D. Cal. 2013) (declining to address new legal theory not raised in complaint, stating court "will not salvage the pleading based on the contents of the briefing").

### 2. <u>Fourth Amendment</u>

The title of Reinlasoder's third cause of action includes reference to the Fourth Amendment to the United States Constitution. But Reinlasoder pled no supporting facts and his responsive brief offers no argument or evidence to oppose summary judgment on this theory of liability. Accordingly, Defendants are entitled to partial summary judgment on Reinlasoder's third cause of action to the extent it alleges a violation of the Fourth Amendment.

### 3.   Due Process

#### a.   Substantive Due Process

While the Due Process Clause confers both substantive and procedural rights, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).  The Supreme Court has noted its "reluctan[ce] to expand the concept of substantive due process[,]" stating that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id*. (internal quotation omitted).

Other federal circuit courts have held that areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution.  *See Nicholas v. Pennsylvania State University,* 227 F.3d 133, 142 (3rd Cir. 2000)

(joining the "great majority" of other circuits in holding that tenured public employment is not protected by substantive due process – citing cases from the Fourth, Sixth, Eighth, and Eleventh Circuits); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994), *cert. denied sub nom. McKinney v. Osceola County Board of County Commissioners,* 513 U.S. 1110 (1995).

The Ninth Circuit has yet to decide whether "substantive due process protects the right to a particular public employment position[,]" but has only recognized substantive due process protection for occupational liberty claims where the government actions altogether foreclose access to a particular profession.  *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007) *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008).  *See also Portman v. County of Santa Clara*, 995 F.2d 898, 908 (9th Cir. 1993).  And the Circuit has noted that substantive due process claims are sustainable in this Circuit only in "extreme cases" such as a government blacklist, where a plaintiff can show a "complete prohibition on entry into a profession." *Id.* at 998.  The Circuit recognized concern "about federal courts reviewing every public employee discharge...."  *Id.*

Because Reinlasoder has failed to bring a liberty interest deprivation claim subject to the substantive due process protection recognized by the Ninth Circuit, Defendants are entitled to summary judgment to the extent Reinlasoder's § 1983 claim is based on a violation of his substantive due process rights.  Reinlasoder's allegations are more appropriately addressed under the rubric of procedural due process, and the Court analyzes his due process claim as such.  *See Grosz v. Lassen Cmty. Coll. Dist.*, 572 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008), aff'd in part, rev'd in part, 360 F. App'x 795 (9th Cir. 2009) (finding substantive due process claim more properly considered a procedural due process claim under *Albright* and analyzing claim as such).

### b.   <u>Procedural Due Process</u>

The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure.  To obtain relief on a procedural due process claim, Reinlasoder must establish: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.  *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir.

2008).

Defendants concede that Reinlasoder's claim satisfies the first two factors. He has a constitutionally protected property interest in his continued employment, and Defendants deprived him of that interest by discharging him.[4] *ECF 22 at 23.* The issue, then, is whether Reinlasoder received adequate process.

"Precisely what procedures the Due Process Clause requires in any given case is a function of context." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998). It is "well established" that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quotation omitted). Instead, it "is flexible and calls for such procedural protections as the particular situation demands." *Id.* Courts evaluate both the pre-termination and post-termination process provided to a discharged employee.

As to pre-termination process, Reinlasoder was entitled to "some

---

[4]Reinlasoder has provided no authority to support the notion that he has a protected property interest in being free from a wrongful investigation. Accordingly, the Court addresses only the wrongful termination issue in the procedural due process framework.

kind of a hearing" prior to his discharge. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The pre-termination hearing, though necessary, need not be elaborate. *Loudermill*, 470 U.S. at 545. A constitutionally adequate pre-termination hearing consists of: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity to respond, either in person or in writing. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 986 (9th Cir. 1998) (citing *Loudermill*, 470 U.S. at 546). A "fundamental due process requirement" is that Reinlasoder be given the "opportunity to present reasons, either in person or in writing, why proposed action should not be taken[.]" *Loudermill*, 470 U.S. at 546.

Here, the undisputed facts establish that Reinlasoder was given notice of the charges against him through Ryder's April 5, 2012 letter summarizing the complaints submitted by Demaniow, Kroll, and Egan. *ECF 26-1.* Hanser subsequently provided a detailed notice of her intent to terminate Reinlasoder's employment, stating the reasons for the potential termination and explaining the evidence in support. *ECF 28-12.* Reinlasoder raises no fact issue in this regard.

Reinlasoder was also afforded a pre-termination opportunity to respond.  He had the opportunity to respond to the allegations and provide his side of the story when he met with Sather, with his attorney present, for the April 10, 2012 interview.  In addition, Hanser's intent-to-terminate letter set up a time and date one week hence "to discuss this letter and the investigative report" before Hanser made her final decision.  *ECF 28-12 at 4.*  Hanser notified Reinlasoder that he could "have the meeting recorded[,]" that his attorney could be present, and that he could also waive the meeting.  *Id.*  Reinlasoder did not attend the meeting, nor did he substantively respond in writing to the charges.  These undisputed facts establish that Reinlasoder was provided constitutionally adequate pre-deprivation notice of the charges against him, an explanation of the employer's evidence, and an opportunity to respond prior to his termination.

The undisputed facts further indicate that Reinlasoder was afforded adequate post-termination process.  Hanser's termination letter advised Reinlasoder of his right to have his termination reviewed by the Commission, and noted that the appeal procedure is set forth in Ordinance 2012-03.  *ECF 28-14 at 2.*  When D'Alton submitted the first

notice of appeal that was noncompliant with Ordinance 2012-03,
Hanser afforded an additional 30 days to submit a more detailed notice
and enclosed a copy of the ordinance for counsel's reference. *ECF 33-5.*
D'Alton timely filed the second more detailed notice of appeal, and by
letter dated August 1, 2012, the Commission set a hearing to consider
Reinlasoder's appeal. *ECF 27-15.* Although D'Alton and Reinlasoder
elected not to attend, the Commission conducted the hearing on the
scheduled date, taking sworn testimony, finding just cause for the
termination, and denying Reinlasoder's appeal. The Commission's
written judgment notified Reinlasoder of his right to appeal the
Commission's final decision to district court. *ECF 27-17.*

The fact that Reinlasoder elected not to attend the post-
termination hearing with the Commission is of no consequence to the
adequacy of the process provided. D'Alton's August 27, 2012 letter to
the Commission indicated that Reinlasoder "would not be present for
the hearing[,]" stating that he had instead elected to file a complaint in
federal court. But, "where adequate administrative procedures exist, a
person cannot state a claim for denial of procedural rights when he has
elected to forego a complete hearing." *Correa v. Nampa Sch. Dist. No.*

*131*, 645 F.2d 814, 817 (9th Cir. 1981) (affirming district court's finding that claimant had "waived her right to claim a due process violation because she knowingly and voluntarily chose to forgo the District's administrative procedures and instead pursued a claim through the Office of Civil Rights"); *see also Bignall v. N. Idaho Coll.*, 538 F.2d 243, 246-47 (9th Cir. 1976) (finding that plaintiffs could not state a claim under the Civil Rights Act for denial of procedural rights when employer afforded a hearing but claimants "chose prematurely to withdraw from it and return to the district court").

Finally, Reinlasoder contends the Commission was not impartial because Hanser recommended her pastor and a member of her Bible group to the three-member Commission.  Reinlasoder also contends that Hanser decided to terminate his employment prior to any investigation taking place, and that she stalled the investigation process so that the newly formed Commission would "stamp" their approval on her termination decision.  Reinlasoder does not allege that any of the board members themselves had personal animosity toward him, nor does he allege that they had any personal or financial stake in his termination.  Thus, Reinlasoder's allegations are insufficient to

raise a fact issue as to whether he was denied due process at the post-termination stage. *See Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 780 (9th Cir. 1982) (finding post-termination hearing met standards of fairness required by due process when, *inter alia*, the "board members did not have any personal or financial stake in the action, nor was any personal animosity alleged"); *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 496-97 (1976) ("A showing that the Board was 'involved' in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decision-making power").

The Court concludes that Reinlasoder received constitutionally adequate process respecting his termination, and Defendants are entitled to summary judgment on Reinlasoder's § 1983 claim to the extent it is based on a violation of his procedural due process rights. Based on the Court's findings herein, it is unnecessary to reach Defendant's collateral estoppel arguments.

## V.   **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that Defendants'
Motion for Partial Summary Judgment *(ECF 21)* be GRANTED and the
third cause of action in Reinlasoder's Amended Complaint, alleging a
violation of 42 U.S.C. § 1983, be DISMISSED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall
serve a copy of the Findings and Recommendation of United States
Magistrate Judge upon the parties.  The parties are advised that
pursuant to 28 U.S.C. § 636, any objections to the findings and
recommendation must be filed with the Clerk of Court and copies
served on opposing counsel within fourteen (14) days after entry hereof,
or objection is waived.

DATED this 14th day of November, 2013.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge